FILED
SUPERIOR COURT
OF GUAM

2020 SEP -8 PM 12: 15

CLERK OF COURT
BY:_____

## IN THE SUPERIOR COURT OF GUAM

GERARD A. CRUZ,

        Plaintiff,

    v.

CARMELITA C. CRUZ,

        Defendant.

**Domestic Case No. DM0554-14**

**DECISION AND ORDER DENYING DEFENDANT'S COUNTER-MOTION TO MODIFY THE STIPULATED INTERLOCUTORY DECREE**

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena, III on July 6, 2020 for hearing on Defendant Carmelita C. Cruz's ("Carmelita's") Countermotion to Modify the Stipulated Interlocutory Decree of Divorce ("Counter-Motion"). Attorney James Maher represents Plaintiff Gerard A. Cruz ("Gerard"), and Attorney Nicole Cruz represents Carmelita. Having duly considered the parties' briefs, oral arguments, and the applicable law, the Court now issues the following Decision and Order and **DENIES** Carmelita's Counter-Motion.

## BACKGROUND

This action arose from a divorce complaint filed on September 25, 2014. The parties eventually settled their divorce and appeared before the Court on September 14, 2015, announcing the terms of settlement regarding the distribution of the community assets, community debts and obligations, and spousal support. Thereafter, the parties executed a Stipulated Interlocutory Decree for Divorce ("Interlocutory Decree"), approved by the Court on November 24, 2015. The Interlocutory Decree, which memorialized the terms of the settlement reached by the parties,

granted a divorce on grounds of adultery. A Final Judgment and Decree for Divorce issued the same day, incorporating the Interlocutory Decree.

The Interlocutory Decree recites the following at the beginning: "The Parties, having reached a full and complete agreement resolving all the issues arising out of the action for the divorce filed herein, and having incorporated all the agreed upon terms and conditions into the Stipulated Interlocutory Decree set forth herein below . . . " Interlocutory Decree at 1.

The body of the Interlocutory Decree is comprised of three sections: community property, community debts and obligations, and spousal support. *Id.* at 2-4. Section I, entitled "Community Property," provides "[t]hat the community property acquired between the Parties be awarded to [Gerard] and [Carmelita] as follows: . . . ." *Id.* at 2. Relevant to this motion is the distribution of the marital residence:

> Marital Family Residence: As to the marital house in Chalan Pago, the parties will list that for sale and attempt to engage a sale of that house for no less than $100,000.00 more than the balance of the current mortgages on that sale. In the event the house is sold, Defendant will obtain all equity after the sale.

\

*Id.* Section III of Interlocutory Decree further provides for an award of spousal support:

> Defendant's Spousal Support: In addition, Plaintiff will pay Defendant $1,000.00 per month spousal support for a period of not less than 12 months, commencing the date of Stipulated Judgment, or by lump sum payment. Plaintiff will continue to provide medical insurance and dental insurance coverage through his employer for Defendant as a form of spousal support.

*Id.* at 4. Gerard's support obligation was satisfied by order through a Qualified Domestic Relations Order ("QDRO") filed on December 23, 2015.

Carmelita filed the instant Counter-Motion, asking the Court to grant her $3,000.00 per month in spousal support, the marital residence as a form of spousal support, attorney's fees, and a money judgment of $88,500.00. Counter-Mot. at 5. Gerard opposes, arguing (1) the stipulated interlocutory decree of divorce cannot be modified due to it being an integrated agreement, (2) Carmelita's motion fails in the same way that her previous motions have, and (3) a settlement agreement is a consent decree which only provides relief through contempt proceedings. Opp'n to Cross-Mot. to Modify the Interlocutory Decree ("Opposition") at 2-6 (May 20, 2019). Carmelita replies, arguing (1) courts generally have the power to modify support and (2) that although non-

payment of a debt alone may not be a sufficient change in circumstances, Carmelita has incurred many financial burdens as a result from Gerard's alleged failures. Reply to Pl.'s Opp'n to Cross-Mot. to Modify Interlocutory Decree ("Reply) at 4-10 (June 3, 2019).

The Court held hearings on July 6, 2020 and July 9, 2020. After hearing the arguments and testimony of the parties, the Court took the matter under advisement.

## DISCUSSION

Preliminarily, the Court declines to address Carmelita's requested remedy of a money judgment in the amount of $88,500.00. This relief was the subject of the February 2019 Decision and Order and the December 2019 Decision and Order following the Motion for Reconsideration of the February 2019 Decision. *See* Decision & Order ("February 2019 D&O") (Feb. 11, 2019); *see also* Decision & Order ("December 2019 D&O") (Dec. 18, 2019). Carmelita filed a notice of appeal for the December 2019 D&O on January 17, 2020. Therefore, because the money judgment relief is currently pending appeal, the Court declines to discuss or issue any orders on the aforementioned relief.

This leaves three main issues before the Court: first, whether the support provisions within Section III of the Interlocutory Decree are modifiable; second, if modifiable, whether there is a change in circumstance sufficient to warrant modification, and third, whether Carmelita is entitled to an award of attorney's fees. The Court finds that although the support provisions in Section III are modifiable, Carmelita has not presented a change in circumstances sufficient to warrant modification. Further, the Court declines to award Carmelita attorney's fees.

**I.     The support provisions in Section III are modifiable.**

"'When an order for support payments in a divorce decree is based on an agreement of the parties, the possibility of subsequent modification of the order without the consent of both parties depends on the nature of the agreement.'" *Lujan v. Lujan*, 2012 Guam 7 ¶ 39 (quoting *Plumer v. Plumer*, 313 P.2d 549, 551 (Cal. 1957)). The Guam Supreme Court in *Scroggs v. Scroggs* summarizes the three types of post-separation agreements discussed in *Lujan* as follows:

> First, an agreement may relate to alimony, and provide for lump sum or periodic payments which are separate from the division of property. Second, support provisions may not be in the nature of alimony, but rather part of a division of property, in which payments are given in lieu of community property. Third, a spouse

may waive all maintenance and support, or waive it as provided in an agreement, in exchange for a more favorable settlement of the community property.

\

2014 Guam 2 ¶ 20 (citations omitted) (citing *Lujan*, 2012 Guam 7 ¶¶ 24-26).

The Court has the authority to modify agreements falling within the first category pursuant to "'its power over alimony generally.'" *Lam v. Lam*, 2015 Guam 6 ¶ 20 (quoting *Lujan*, 2012 Guam 7 ¶ 24). Agreements falling within the second category "are treated like other property settlement agreements dealing solely with a division of property," modifiable only upon a showing of fraud, consent of the parties, or other contractual violations. *Id.* ¶ 21. The Court's ability to modify the third category of agreements depends upon whether the agreement is integrated based on a number of factors. *Id.* ¶ 22 (citing *Plumer*, 313 P.2d at 552).

The Court finds that the support provisions in Section III fall within the first *Lujan* category. The property divisions are addressed in Sections I and II of the Interlocutory Decree, separate from the support provisions of Section III. There is nothing within the four corners of the Interlocutory Decree which suggests that spousal support was given in lieu of community property. In fact, the opposite has occurred as Section I distributed community property to Carmelita without reference to spousal support. Last, there is no indication that spousal support was waived in exchange for a more favorable settlement of the community property. The opposite has occurred as Carmelita received a spousal support award through the settlement.

Gerard argues that the statement of finality at the beginning of the Interlocutory Decree leads to the conclusion that the settlement is an integrated one, not subject to modification. However, the determination of whether the settlement is integrated is relevant only if the settlement falls within the third *Lujan* category. *See Lam*, 2015 Guam 6 ¶ 22. As the Court finds that Section III falls within the first *Lujan* category, integration is not relevant to the analysis. Therefore, the support provisions in Section III are modifiable.

Although Section III is modifiable as falling within the first *Lujan* category, the Court does not have the authority to award the marital residence to Carmelita as a form of support. The distribution of the marital residence is addressed in Section I, entitled "Community Property," of the Interlocutory Decree. The Guam Supreme Court in *Lujan* has addressed this issue:

> Where a party to a divorce action, represented by counsel, voluntarily executes a property settlement agreement which is approved by the court and incorporated into a divorce decree, such a decree may not be vacated or modified *as to such property provisions* in the absence of fraud or gross inequity.

2012 Guam 7 ¶ 22 (emphasis added) (quoting *Leon Guerrero v. Moylan*, 2000 Guam 28 ¶ 9). Carmelita has not presented any evidence of fraud nor advanced any arguments that the Interlocutory Decree is grossly inequitable. As such, the Court does not have the authority modify Section I of the Interlocutory Decree, making Carmelita's request for the marital residence as a form of support outside the realm of the Court's authority.

**II.    Carmelita has not presented a change in circumstances sufficient to warrant modification.**

As the support provisions in Section III are modifiable, the Court retains the authority to modify such support:

> When a dissolution of marriage is granted, the tribunal shall . . . make such suitable allowance to the other spouse for that person's support, during that person's life or for a shorter period, as the Court may deem just, having regard to the circumstances of the parties respectively; and the Court may, from time to time, modify its order in these respects.

*Lujan*, 2012 Guam 7 ¶ 23 (quoting 19 G.C.A. § 8405). In order for the Court to modify the spousal support award in Section III, the Court "must determine whether there is a material change in circumstances warranting modification, and the moving party must prove that there exists a nexus between the change in circumstances and the change in need." *Kang v. Kang*, 2014 Guam 25 ¶ 18 (quoting *Malabanan v. Malabanan*, 2013 Guam 30 ¶ 30).

In considering whether a change of circumstances has occurred, the Court considers, *inter alia*, "the ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living," and "[t]he obligations and assets, including the separate property, of each party." Cal. Fam. Code § 4320(c), (e). Although the Court may have the authority to modify Section III, the circumstances presented do not warrant modification at this time.

### a. *The evidence presented before the Court suggests modification is not warranted.*

Both parties presented evidence and testimony regarding their incomes and debt obligations. Carmelita testified that when she works full time, she makes around $3,000.00 per month.[1] Carmelita's debts, when considering her declaration filed June 3, 2019 and the changes to those debts between the filing and the hearing, amount to nearly $4,900.00 per month. Gerard testified that his net income is approximately $11,000.00 per month. Gerard's debt obligations amounted to approximately $11,500.00.[2] Carmelita argued that because Gerard no longer has to pay the $1,200 Personal Finance Center ("PFC") Loan due to the loan being foreclosed, Gerard now has excess income which could pay for the requested spousal support. However, Gerard also explained that the parties' daughter's student loan payments have increased to $1,200.00 per month and that Gerard still pays a deficiency balance of $1,000.00 per month on the PFC loan. As such, the decrease is offset by both the increase in student loan payments[3] and the payment of the deficiency balance. In summary, Gerard's income has remained the same and his debt obligations have remained approximately the same, if not slightly increased. Carmelita's income, based on the evidence presented, has remained the same and her debt obligations have increased.

Despite an increase in Carmelita's expenses, the Guam Supreme Court has held that "[m]aintaining a litany of expenses is not sufficient to justify an increase of spousal support." *Malabanan v. Malabanan*, 2013 Guam 30 ¶ 30. The Court is sympathetic to Carmelita's situation as her burdens have increased due to the steep costs of chemotherapy. However, such an increase in expenses is not sufficient to modify spousal support, taking into consideration Gerard's lack of income available to pay for the requested amount. The Court further acknowledges the other factors raised by Carmelita and listed in Section 4320 of the California Family Code. *See* Counter-Mot. at

---

[1] The parties did not explain or develop how the donated sick leave factors into Carmelita's monthly income. Carmelita explained that her co-workers donate sick leave which allows her to work less when needed for her treatment but did not develop how such leave varies her income when she does not work full time.

[2] A detailed list of Gerard's debt obligations were not provided for the present motion. *See* Decl. of Gerard Cruz (May 20, 2019) As such, the Court makes reference to Gerard's last debt list as detailed in his 2016 declaration. *See* Suppl. Decl. of Pl. at 1-2 (Dec. 19, 2026).

[3] The Court notes that the student loan payments, as of the filing of this Decision and Order, are deferred. Such payments, however, are still properly considered when determining whether Gerard has the ability to pay the requested spousal support.

3-5; Reply at 7-8. However, such factors cannot overcome the evidence presented that Gerard simply does not have the income available to pay for the requested spousal support.

The Court also notes Carmelita's argument regarding disparity in income in her Reply: "[Gerard] has the ability to contribute to support to [Carmelita] given their disparity in income, wherein [Gerard's] income is approximately $200,000.00 annually, and [Carmelita's] income is approximately $40,000.00 annually." Reply at 8. As the Court has previously noted, "the disparities between the incomes of the parties were known at the time that they mutually agreed to spousal support in the Interlocutory Decree. Thus, it is improper to suggest that such disparities now warrant additional spousal support without evidence of some other change in circumstances." Decision & Order on Def.'s Mot. for Order to Show Cause & Contempt, Mot. for Spousal Support & Fees, & Mot. to Enforce Decrees ("March 2017 D&O") at 5-6 (Mar. 15, 2017). The Court further notes California authority which holds the same: "a disparity in income, standing alone, does not justify an award of spousal support." *In re Marriage of Zywiciel*, 100 Cal. Rptr. 2d 242, 244 (Cal. Ct. App. 2000).

b. *Carmelita has not presented any authority which suggests that non-payment of debts constitutes a change in circumstances sufficient to modify spousal support.*

Carmelita failed to provide a legal basis for modification on the basis of prior non-payment of debts. In light of this, the Court has already addressed the debts raised in prior Decision and Orders. The Court has already found that Gerard has complied with his initial $12,000.00 support debt through the 2015 QDRO. *See* March 2017 D&O at 5. The Court has also addressed the issue of the PFC Personal Loan, finding that the loan went into default due to Carmelita's failure to cooperate with the refinancing process. February 2019 D&O at 8. The Court has also addressed the issue of health insurance: "In applying this jurisdiction's plain meaning approach to interpreting contract language, the Court finds that [Gerard] is only required to provide medical and dental insurance coverage to [Carmelita] through his employer." Decision & Order on Def.s' Mot. to Amend or Alter Decision & Order; Mot. for Contempt; Mot. for Spousal Support & Fees; Mot. to Enforce Decrees & for Money Judgment ("August 2017 D&O) at 4 (Aug. 14, 2017). As such, the

non-payment issues Carmelita raised in the present motion have been addressed by the Court in prior decisions.

> c. *Carmelita has not presented any authority which suggests that accrual of attorney's fees constitutes a change in circumstances sufficient to modify spousal support.*

Carmelita argues that accrual of attorney's fees over the several motions leading up to the instant motion constitutes a change in circumstances sufficient to modify spousal support. Counter-Mot. at 4; Reply at 6. However, Carmelita has failed to present a legal basis to modify spousal support on this ground. Further, the legislature has provided for awards of attorney's fees in "prosecut[ing] or defend[ing] the action." 19 G.C.A. § 8402. As such, accrual of attorney's fees should be considered under the standard of Section 8402 in prosecuting or defending the action as opposed to constituting a basis for modification of spousal support under Section 8405.

Therefore, the Court finds that although the support provisions in Section III are modifiable, Carmelita has not presented a change in circumstances sufficient to warrant modification.

## III. The Court declines to award Carmelita attorney's fees.

Initially, the Court notes that Carmelita's instant request includes an award for attorney's fees for bringing past motions:

> In this case, filing such motions was necessary to enable [Carmelita] to prosecute and defend her interests . . . . [Carmelita's] claims over time includes [sic: 1) spousal support 2) medical insurance 3) payment of community debts, 4) marital residence, and 5) [Carmelita's] separate property interest . . . .

Reply at 9. However, Carmelita, in bringing motions to enforce and modify, has already requested attorney's fees. Such requests have been denied in prior orders by the Court.[4]

The Court now turns to whether attorney's fees are warranted in the instant motion. The Court may, "in its discretion, require the husband or wife, as the case may be, to pay as alimony any money necessary to enable the wife, or husband to . . . prosecute or defend the action." *Cruz v. Cruz*, 2005 Guam 3 ¶ 9 (quoting 19 G.C.A. § 8402). The determination of what constitutes

---

[4] *See* March 2017 D&O ("The Court also DENIES Defendant's Motion for Contempt and Motion for Spousal Support and Fees"); February 2019 D&O ("For the reasons stated above, the Court hereby **DENIES** Ms. Cruz's Motion for Order to Show Cause & Contempt and Motion to Enforce Decree . . . .") (emphasis in original); December 2019 D&O at 3 ("Preliminarily, the Court has already ruled on the issue of attorney's fees. . . . The Court denied Carmelita's Motion for Contempt in its entirety.").

"necessary" rests within the discretion of the trial court, considering factors including: the circumstances of the parties, their necessities, the property each possesses, and their respective incomes and earning abilities. *Id.* ¶ 10 (citing *Howton v. Howton*, 124 P.2d 837, 838 (Cal. Dist. Ct. App. 1942); *Arnold v. Arnold*, 12 P.2d 435, 436 (Cal. 1932); *Sweeley v. Sweeley*, 170 P.2d 469, 470 (Cal. 1946)). The Court finds the income and debt analysis conducted in Section I(a) to be similarly relevant and applicable here. As the Court, in Section I(a), found that Gerard is without the ability to pay for the spousal support requested, the Court further founds that Gerard is similarly without the ability to pay Carmelita's attorney's fees.

Therefore, the Court declines to award Carmelita attorney's fees.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Carmelita's Counter-Motion. The Court finds that although the support provisions in Section III are modifiable, Carmelita has not presented a change in circumstances sufficient to warrant modification. Further, the Court declines to award Carmelita attorney's fees.



**IT IS SO ORDERED** this 8th day of September, 2020.

_____
**HONORABLE ALBERTO C. LAMORENA, III**
**Presiding Judge, Superior Court of Guam**